UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

EDWARD ANDERSON                    :
                                   :
v.                                 :    CIV. NO. 3:06CV1968 (HBF)
                                   :
WALTER FORD,                       :
JOHN SIEMINSKI,                    :
JAMES E. DZURENDA, and             :
WAYNE T. CHOINSKI                  :
                                   :

**<u>RULING ON CROSS MOTIONS FOR SUMMARY JUDGMENT</u>**

Plaintiff, Edward Anderson, brings this civil rights action
pursuant to 42 U.S.C. §1983, alleging that defendant Wardens
Walter Ford,  John Sieminski, James E. Dzurenda and Wayne T.
Choinski subjected him to cruel and unusual punishment in
violation of the Eighth Amendment to the United States
Constitution.

Pending is defendants' Motion for Summary Judgment arguing,
among other things, that there are no facts demonstrating that
any of the defendants was personally involved in violating
plaintiff's civil rights. Also pending is plaintiff's Motion for
Summary Judgment, contending that there are no genuine issues of
material fact to be decided by a jury and judgment should enter
for plaintiff as a matter of law. For the reasons that follow,
defendants' Motion for Summary Judgment **[Doc. #43]** is **GRANTED** and
plaintiff's Motion for Summary Judgment **[Doc. #30]** is **DENIED**.

STANDARD OF LAW

Summary judgment is appropriate where there exists no
genuine issue of material fact and, based on the undisputed
facts, the moving party is entitled to judgment as a matter of
law.  See  D'Amico v. City of New York, 132 F.3d 145, 149 (2d
Cir. 1998);  see also  Anderson v. Liberty Lobby, Inc., 477 U.S.
242, 247-48, (1986).  The non-moving party may not rely on
conclusory allegations or unsubstantiated speculation.  See
D'Amico, 132 F.3d at 149.  Instead, the non-moving party must
produce specific, particularized facts indicating that a genuine
factual issue exists.  See  Wright v. Coughlin, 132 F.3d 133, 137
(2d Cir. 1998).  To defeat summary judgment, "there must be
evidence on which the jury could reasonably find for the
[non-movant]."  Anderson, 477 U.S. at 252.  If the evidence
produced by the non-moving party is merely colorable or is not
significantly probative, summary judgment may be granted.  See
id. at 249-50.

Pursuant to D. Conn. L. Civ. R. 56(a)(3),

> Each statement of material fact in a Local
> Rule 56(a)1 Statement by a movant or by an
> opponent in a Local Rule 56(a)2 Statement,
> and each denial in an opponent's Local Rule
> 56(a)2 Statement, must be followed by a
> specific citation to (1) the affidavit of a
> witness competent to testify as to the facts
> at trial and/or (2) evidence that would be
> admissible at trial. The affidavits,
> deposition testimony, responses to discovery
> requests, or other documents containing such
> evidence shall be filed and served with the
> Local Rule 56(a)1 and 2 Statements in
> conformity with Fed. R. Civ. P. 56(e).
> Counsel and pro se parties are hereby
> notified that failure to provide specific

citations to evidence in the record as
required by this Local Rule may result in
sanctions, including, when the movant fails
to comply, an order denying the motion for
summary judgment, and, when the opponent
fails to comply, an order granting the
motion.

A party may not create a genuine issue of material fact by
presenting contradictory or unsupported statements. <u>See</u>
<u>Securities & Exchange Comm'n v. Research Automation Corp.</u>, 585
F.2d 31, 33 (2d Cir. 1978). Nor may he rest on the "mere
allegations or denials" contained in his pleadings. <u>Goenaga v.</u>
<u>March of Dimes Birth Defects Found.</u>, 51 F.3d 14, 18 (2d Cir.
1995). <u>See also</u> <u>Ying Jing Gan v. City of New York</u>, 996 F.2d 522,
532 (2d Cir. 1993) (holding that party may not rely on conclusory
statements or an argument that the affidavits in support of the
motion for summary judgment are not credible). A self-serving
affidavit which reiterates the conclusory allegations of the
complaint in affidavit form is insufficient to preclude summary
judgment. <u>See</u> <u>Lujan v. National Wildlife Fed'n</u>, 497 U.S. 871,
888 (1990). "The nonmovant, plaintiff, must do more than present
evidence that is merely colorable, conclusory, or speculative and
must present concrete evidence from which a reasonable juror
could return a verdict in her favor." <u>Page v. Connecticut</u>
<u>Department of Public Safety</u>, 185 F. Supp. 2d 149, 152 (D. Conn.
2002) (citations and internal quotation marks omitted).

If a nonmoving party has failed to make a sufficient showing
on an essential element of his case with respect to which he has
the burden of proof at trial, then summary judgment is

appropriate.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23

(1986).  If the plaintiff fails to provide any proof of a

necessary element of the plaintiff's case, then there can be no

genuine issue as to any material fact.  Id.  A complete failure

to provide proof of an essential element renders all other facts

immaterial.  Id.  see also Goenaga v. March of Dimes Birth

Defects Found., 51 F.3d 14, 18 (2d Cir. 1995) (movant's burden is

satisfied if it can point to an absence of evidence to support an

essential element of nonmoving party's claim).


FACTS

    Based on defendants' Local 56(a)(1) Statement and exhibits[1]

[doc. #43] and defendants' Local 56(a)(2) Statement [doc. #44]

and plaintiff's Local 56(a)1 Statement and exhibits[2] [doc. #30],

and Local 56(a)(2) Statement [Doc. #47], the following facts are

---

[1]Defendants' exhibits include an Affidavit of Dr. Heather
Gray [doc. #43-3]; Affidavit of Fred Levesque, [doc. #43-4];
Affidavit of Mary Jane Steele [doc. #43-5], Affidavit of Dr.
Robert L. Trestman [doc. #43-6]; selected case law [doc. #43-7];
plaintiff's Department of Corrections Medical Records [doc. #43-
8, manually filed], and defendants' Local Rule 56(a)(1) Statement
[doc. #43-9]. Also considered was defendants' Local Rule 56(a)(2)
Statement  [doc. #44], filed in response to plaintiff's motion
for summary judgment.

[2]Plaintiff's exhibits include a Local Rule 56(a)(1)
Statement [doc. #30] filed in support of summary judgment; Ex. A
State of Connecticut Superior Court mittimus dated June 2, 2005,
Ex. B. Affidavit of Attorney Frank Cannatelli; Ex. C. Letter from
Attorney Frank Cannatelli to the Warden at Bridgeport
Correctional Center dated July 11, 2005; and Ex. D. Letter from
Warden Walter Ford to Attorney Frank Cannatelli dated July 20,
2005. [Doc. #30]. Also considered was plaintiff's Local Rule
56(a)(2 Statement [doc. #47], filed in opposition to defendants'
motion for summary judgment.

undisputed.

1. The plaintiff, Edward Anderson, was incarcerated in the custody of the Commissioner of Correction from May 3, 2005 through December 12, 2005, when he was injured in a dispute with his cellmate. [Def. Local 56(a)(1) Stat. ¶1; Pl. Local 56(a)(2) Stat. ¶1].

2. The plaintiff was sentenced on June 2, 2005, to a term of eighteen (18) months in the custody of the Commissioner of Correction, in Docket CR-04-0203281-S GA#2, Bridgeport, Connecticut. [Def. Local 56(a)(1) Stat. ¶2; Pl. Local 56(a)(2) Stat. ¶2].

3. On that sentencing mittimus, under the heading "specify here any pertinent conditions, if sentences are consecutive and if probation was ordered," was written "psych. treatment inpatient if necessary taking psych. medication." [Def. Local 56(a)(1) Stat. ¶3; Doc. #30 Ex. A].

4. Mr. Anderson was housed in the Bridgeport Correctional Center from May 3 to August 17, 2005. He was housed at MacDougall/Walker Correctional Institution from August 17 through September 30, 2005. He was housed at Garner Correctional Institution from September 30 through October 14, 2005. He was then housed at Northern Correctional Institution from October 14 through December 12, 2005. [Def. Local 56(a)(1) Stat. ¶4; Pl. Local 56(a)(2) Stat. ¶4].

5. On or about July 11, 2005, plaintiff's counsel, Attorney Frank Cannatelli, contacted Warden Ford at Bridgeport

Correctional Center and asked that his client, a convicted inmate, be moved to Connecticut Valley Hospital for evaluation. [Def. Local 56(a)(1) Stat. ¶5; Def. Local 56(a)(2) ¶4; Pl. Local 56(a)(1) Stat. ¶4, Doc. #30 Ex. C; Pl. Local 56(a)(2) ¶5].

6.  On July 20, 2005, Warden Ford responded, stating that Attorney Cannatelli's letter was forwarded to the Mental Health Department. "Your request will be considered by Clyde McDonald, UCONN." [Def. Local 56(a)(1) Stat. ¶6; Def. Local 56(a)(2) Stat. ¶5; Pl. Local 56(a)(1) Stat. ¶5, Doc. #30 Ex. D; Pl. Local 56(a)(2) ¶6].

7.  Warden Choinski referred Mr. Anderson to mental health on October 19, 2005, when he received a strange request from the plaintiff. [Def. Local 56(a)(1) Stat. ¶7; Pl. Local 56(a)(2) Stat. ¶7].

8.  Plaintiff was housed in general population until October 14, 2005, when he was placed in the Chronic Discipline Unit. His placement at Northern in that Unit was the result of incidents of failure to follow prison rules. Anderson received three Class A disciplinary reports within 120 days, beginning May 10, 2005.  On May 10, 2005, he received a disciplinary ticket for Security Tampering and pleaded guilty.  On May 28, 2005, he received a disciplinary ticket for Fighting and pleaded guilty. On June 4, 2005, he received a disciplinary ticket for Insulting Language and pleaded guilty. On June 14, 2005, he received a disciplinary

ticket for Insulting Language and pleaded guilty. On June
28, 2005, he received a disciplinary ticket for Threats and
pleaded not guilty. [Def. Local 56(a)(1) Stat. ¶8; Levesque
Aff. ¶6].

9.  Placement in the Chronic Discipline Unit does not place an
inmate in more danger than is faced by those inmates in
general population.  Fights and assaults occur in prison
settings in every level of classification from high to low.
Additionally, those individuals who are placed in Chronic
Discipline are not the most dangerous individuals in the
Connecticut system.  Indeed, often they are individuals with
short sentences of a relatively minor nature who simply
refuse to follow prison rules. [Def. Local 56(a)(1) Stat.
¶10; Pl. Local 56(a)(2) Stat. ¶10].

10.  Health care for prison inmates in the Connecticut Department
of Correction (DOC) is provided by Correctional Managed
Health Care (CMHC), a comprehensive inmate health care
system which provides medical, mental health and dental
services. [Def. Local 56(a)(1) Stat. ¶11; Pl. Local 56(a)(2)
Stat. ¶11].

11.  This service was formed on August 11, 1997, as a result of
an agreement between the DOC and the University of
Connecticut Health Center (UCONN Health Center). Under that
agreement, UCONN is the provider of medical services to
inmates incarcerated within the State of Connecticut.  [Def.
Local 56(a)(1) Stat. ¶12; Pl. Local 56(a)(2) Stat. ¶12].

12. The UCONN Health Center manages and oversees CMHC. [Def. Local 56(a)(1) Stat. ¶13; Pl. Local 56(a)(2) Stat. ¶13; Trestman Aff. ¶¶6, 8].

13. The facility wardens, custody officers and staff do not initiate medical decisions and have no direct role in the health care provided to inmates within their facilities, assuming there is no overriding security concern. [Def. Local 56(a)(1) Stat. ¶15; Trestman Aff. ¶9].

14. Mental health care for inmates in state prisons in Connecticut is provided by contract with UCONN through CMHC personnel. It is not provided by the wardens of correctional institutions. CMHC does sometimes receive referrals concerning inmates from these wardens. In those instances, the particular inmate's mental health needs are examined by the personnel of CMHC and, depending on the results, the inmate receives the mental health care services that are appropriate. [Def. Local 56(a)(1) Stat. ¶15; Gaw Aff. ¶18].

15. Mr. Anderson was provided mental health care from May 3, 2005, through December 5, 2005. That mental health care consisted of evaluations by psychiatrists, psychologists and other health professions, in-patient and out-patient care. [Def. Local 56(a)(1) Stat. ¶16; Pl. Local 56(a)(2) Stat. ¶16].

16. In many cases, Mr. Anderson refused medications and mental health care. [Def. Local 56(a)(1) Stat. ¶17; Gaw Aff. ¶¶ 8,

9, 13, 14, 16; Pl. Local 56(a)(2) Stat. ¶17].

17. Evaluations by mental health services found that Mr. Anderson was not psychotic. [Def. Local 56(a)(1) Stat. ¶18; Gaw Aff. ¶¶ 10, 11, 12, 14, 15, 17].

18. Mr. Anderson refused mental health evaluations on several occasions. [Def. Local 56(a)(1) Stat. ¶19; Gaw Aff. ¶¶9, 13, 14, 16; Pl. Local 56(a)(2) Stat. ¶19].

19. The classification of inmates is performed by the Offender Classification and Population Management Unit. The Unit's Director is Frederick J. Levesque, Jr. Mr. Levesque has been in charge of that Unit since November 1995. Inmates are not classified by the wardens of correctional facilities. Specifically, placement in the Chronic Discipline Unit at the Northern Correctional Institution is made after information gathering by the Population Management Unit with the final decision made by Mr. Levesque alone. [Def. Local 56(a)(1) Stat. ¶20; Levesque Aff. ¶¶ 2, 3, 4, 5].

20. Mr. Levesque made the final decision to place Mr. Anderson in the Chronic Discipline Unit. Neither at that time nor at any time between May 5 and December 12, 2005, was Mr. Levesque aware or made aware by any of the defendants that Mr. Anderson was a danger to himself or others. [Def. Local 56(a)(1) Stat. ¶21; Levesque Aff. ¶¶4, 5, 7, 8; Pl. Local 56(a)(2) Stat. ¶21].

21. Mr. Anderson was not placed in the Chronic Discipline Unit

because of any psychological problems or because he posed a danger to himself or others. Instead, such a placement was the result of his failure to conform to institutional rules. Mr. Levesque had no knowledge that Mr. Anderson posed a danger to himself or others or that any inmate, including that inmate involved in the December 12, 2005, incident, posed a danger to Mr. Anderson at any time from May 5, 2005, until the time of that incident. If Mr. Levesque had known, or if any warden had so known, the two inmates would have been immediately separated from each other. [Def. Local 56(a)(1) Stat. ¶22; Levesque Aff. ¶¶7, 8].

22. The mental health chart review performed by Dr. Gaw demonstrates that mental health care was available to Mr. Anderson from the day of his admission to the day of the incident in question. The plaintiff ordinarily, however, either refused such care, indicated he did not need such or was evaluated as not needing any specific care except for the availability of mental health treatment when necessary and appropriate. On two occasions, May 5, 2005, and November 8, 2005, plaintiff was admitted to the infirmary for observation and then released. [Def. Local 56(a)(1) Stat. ¶23; Gaw Aff. ¶¶7, 8 14, 15; Pl. Local 56(a)(2) Stat. ¶23].

<u>Amended Complaint</u>

Plaintiff brings this two count civil rights action pursuant to 42 U.S.C. §1983, alleging cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution. In Count one, plaintiff alleges that defendants refused to abide by the sentencing mittimus requiring psychiatric treatment, and without proper mental health treatment plaintiff was improperly classified as a disciplinary problem. [Doc. #7 ¶¶ 1-24]. Plaintiff contends that his classification in the Chronic Disciplinary Unit "directly resulted" in him being housed with the most serious offenders and "directly" resulted in the assault by another inmate on December 12, 2005. <u>Id.</u> In Count Two, plaintiff alleges that when plaintiff, by his attorney, called the DOC to request proper psychiatric care, defendants retaliated against plaintiff for "being a bother." <u>Id.</u> ¶¶ 19-21. "Said retaliation included taking disciplinary action against . . . plaintiff and having him designated a chronic disciplinary problem, when in reality said inmate just needed medications and treatment." <u>Id.</u> ¶20. Plaintiff seeks compensatory and punitive damages and attorney's fees. <u>Id.</u> at 9.

Deliberate indifference by prison officials to a prisoner's serious medical need constitutes cruel and unusual punishment in violation of the Eighth Amendment. <u>See</u> <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976). To prevail on such a claim, however, the plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." <u>Id.</u>

11

at 106. A prisoner must show intent to either deny or unreasonably delay access to needed medical care or the wanton infliction of unnecessary pain by prison personnel. See Id. at 104-05. Mere negligence will not support a §1983 claim; the conduct complained of must "shock the conscience" or constitute a "barbarous act." McCloud v. Delaney, 677 F. Supp. 230, 232 (S.D.N.Y. 1988) (citing United States ex rel. Hyde v. McGinnis, 429 F.2d 864 (2d Cir. 1970)).

Plaintiff has not alleged that the mental health services provided by the Correctional Managed Health Care (CMHC) violate the Eighth Amendment. Plaintiff did not sue CMHC or UCONN Health Services, the medical personnel responsible for providing care to incarcerated inmates.[3] Rather, plaintiff has sued the four facility wardens and argues that, "Plaintiff entered the Department of Corrections, and was never sent to CVH for the psychiatric evaluation and treatment ordered by the Court." [Doc.

---

[3]Defendants have provided sworn affidavits to show that CMHC provides medical and mental health services for Connecticut inmates. [Trestman Aff. ¶3; Gaw Aff. ¶18]. Under this program UCONN Health Center provides medical services to inmates incarcerated in the State of Connecticut. [Trestman Aff. ¶6]. "While the DOC remains involved in the monitoring of the agreement and services provided thereunder, between it and the UCONN Health Center, the facility Wardens and custody officers and staff do no initiate medical decisions and have no direct role in the health care provided to inmates within their facilities, assuming there is no over-riding security concern." [Trestman Aff. ¶9; Gaw Aff. ¶18].

When a motion for summary judgment is supported by documentary evidence and sworn affidavits, the nonmoving party must do more than vaguely assert the existence of an unspecified disputed material fact or offer speculation or conjecture. See Western World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir. 1990).

#30 at 2].

DISCUSSION

## Personal Involvement

Defendants first argue that the claims against them in their individual capacity should be dismissed because plaintiff fails to provide any evidence of their personal involvement in any of the alleged constitutional deprivations.

To state a claim under Section 1983, plaintiff must allege direct or personal involvement in the alleged constitutional violation.  See Provost v. City of Newburgh, 262 F.3d 146, 154 (2d Cir. 2001); Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) ("It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'") (quoting Moffit v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991)). "The rule in this circuit is that when monetary damages are sought under § 1983, the general doctrine of respondeat superior does not suffice and a showing of some personal responsibility of the defendant is required." Johnson v. Glick, 481 F.2d 1028, 1034 (2d Cir), cert. denied, 414 U.S. 1033 (1973).   The "personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom

13

under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed wrongful acts, or (5) the defendant exhibited deliberate indifference in the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring." Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).

To demonstrate constitutional liability under the Eighth Amendment, plaintiff provided a copy of the sentencing mittimus, an affidavit of his counsel avering that his attorney called Bridgeport Correctional Center, with a copy of a letter sent to Warden Ford requesting a psychiatric evaluation at CVH, all of which he contends were disregarded.[4] [Doc. #30 Ex. A, B, C].

A review of the record reveals no factual basis demonstrating the personal involvement of defendants. Plaintiff argues that, since the sentencing mittimus contained a comment "psych. treatment in patient if necessary taking psych. medication," "the law requires, once custody is given to the Commissioner, that appropriate medical care be given." [Doc. #47 at 1-2]. Plaintiff argues that, "the Criminal Court adequately placed the defendant wardens on notice of plaintiff's need for psychiatric treatment." "Plaintiff believes that defendants were

---

[4]Plaintiff's attorney sent a letter to Warden Walter Ford on July 11, 2005, requesting that Mr. Anderson receive an evaluation at CVH. [Doc. #30 Ex. B ¶7; Ex. C]. Warden Ford responded to counsel's letter on July 20, 2005, stating "[b]e advised that your letter was forwarded to our Mental Health Department. Your request will be considered by Clyde McDonald of UCONN." [Doc. #30, Ex. D].

negligent, when they failed to make the proper referrals, or if they did, did so such that they failed to have a system to monitor whether said referrals were in fact made and complied with." [Doc. #47 at 7, (emphasis added)].  However, such conclusory allegations are insufficient to establish the personal involvement of defendants under Section 1983. See Colon, 58 F.3d at 873; Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991) (a "bald assertion," unsupported by evidence, cannot overcome a properly supported motion for summary judgment).  Rather, to impose supervisory liability, a prisoner must allege that the "official had actual or constructive notice of the unconstitutional practices and demonstrated gross negligence or deliberate indifference by failing to act."  Merriwether v. Coughlin, 879 F.2d 1037, 1048 (2d Cir. 1989) (emphasis added).

For purposes of Section 1983, however, personal involvement cannot be established based on the receipt of a letter or grievance.  Woods v. Goord, No. 01 Civ. 3255(SAS), 2002 WL 731691, at *7 (S.D.N.Y. Apr. 23, 2002) (collecting cases). Likewise, "allegations that an official ignored a prisoner's letter or grievance, is insufficient to establish personal liability for purposes of section 1983." Atkins v. County of Orange, 251 F. Supp. 2d 1225, 1233 (S.D.N.Y. 2003); see Sealey v. Giltner, 116 F.3d 47, 51 (2d Cir. 1997); see also, Voorhees v. Goord, No. 05 Civ. 1407, 2006 WL 1888638, *5 (S.D.N.Y. Feb. 24, 2006) (collecting cases); Burgess v. Morse, 259 F. Supp. 2d 240, 248 (W.D.N.Y. 2003) ("[T]he fact that an official ignored a

letter alleging unconstitutional conduct is not enough to establish personal involvement); Thompson v. State of New York, No. 99 Civ. 9875(GBD)(MHD), 2001 WL 636432, at *7 (S.D.N.Y. Mar. 15, 2001) (holding that the adoption by the DOC Superintendent of the recommendation by an investigating officer of a prisoner's grievance cannot by itself demonstrate supervisory liability); Ramos v. Artuz, No. 00 Civ. 0149(LTS)(HBP), 2001 WL 840131, at *7 (S.D.N.Y. July 25, 2001) ("District Courts have generally been reluctant to find personal involvement sufficient to support liability where a prison official's involvement is limited to the receipt of a prisoner's letters or complaints."); Rivera v. Goord, 119 F. Supp. 2d 327, 344 (S.D.N.Y. 2000) (holding that written complaints ignored by prison officials is insufficient to hold supervisory defendants liable under §1983); Thomas v. Coombe, No. 95 Civ. 10342(HB), 1998 WL 391143, *6 (S.D.N.Y. July 13, 1998) ("the fact that an official ignored a letter alleging unconstitutional conduct is not enough to establish personal involvement."). "Even assuming [defendants] had received [plaintiff's] complaints and were aware of the allegedly unconstitutional conduct of the Medical and Correctional defendants, [plaintiff] has alleged no facts by which it could be inferred that any of these defendants were deliberately indifferent to the violations or grossly negligent in supervising any of the other defendants." Rivera, 119 F. Supp. 2d at 344. "Were it otherwise, virtually every prison inmate who sues for constitutional torts by [prison officials] could name the

[supervisor] as a defendant since the plaintiff must pursue his prison remedies, and invariably the plaintiff's grievance will have been passed upon by the [supervisor]." Thompson v. State of New York, 2001 WL 636432, at *7; see Woods v. Goord, 2002 WL 731691, at *7 ("Referring medical complaint letters to lower-ranked prison supervisors, however, does not constitute personal involvement.") (citing Ramos, 2001 WL 840131, at *8). "The reason for this rule appears to be the fact that high-level DOC officials delegate the task of reading and responding to inmate mail to subordinates, and, thus, a letter sent to such an official often does not constitute actual notice." Voorhees, 2006 WL 1888638, at *5 (citing Freeman v. Goord, 02 Civ. 9033(PKC), 2005 WL 3333465, at * 10 (S.D.N.Y. Dec. 7, 2005)); see Sealey, 116 F.3d at 51 (Commissioner referred the prisoner's first letter to a director for a decision on the prisoner's appeal. The second letter was a status inquiry and the Commissioner informed the prisoner that a decision was rendered. The Court of Appeals found that the letters and the Commissioner's response did "not demonstrate the requisite personal involvement.").

"Personal involvement will be found, however, where a supervisory official receives and acts on a prisoner's grievance or otherwise reviews or responds to a prisoner's complaint." Id. (citing Ramos, 2001 WL 840131, at *8-10). Here, plaintiff has not demonstrated that Warden Ford received the telephone call from plaintiff's lawyer, or notice of the telephone call. The

affidavit merely states that plaintiff's attorney telephoned Bridgeport Correctional Center and left a message for Warden Ford, requesting mental health services for his client. [Pl. Ex B, Cannatelli Aff. ¶7]. It is undisputed that Warden Ford received Attorney Cannatelli's letter, responded to it on July 22, 2005, and referred the request to mental health. [Doc. #30 Ex. C & D].  The record shows that by July 11, 2005, plaintiff had been evaluated by mental health and had been receiving mental health care at Bridgeport Correctional Center for two and a half months. [Gaw Aff. ¶¶6-8; Doc. 43-8 Certified Medical Records at 56-62, 73-79, 134].  Accordingly, plaintiff has failed to demonstrate Warden Ford's gross negligence or deliberate indifference in failing to act.[5]  Merriwether v. Coughlin, 879 F.2d 1037, 1048 (2d Cir. 1989).

Plaintiff makes no specific claims of personal involvement against Wardens Sieminski, Dzurenda and Choinski other then claiming that they ignored the mittimus. [Doc. #7 ¶¶10, 16,17, 19, 21; Doc. #30 at 1, 4], or that they retaliated against plaintiff. Moreover, plaintiff offers no evidence on summary judgment in support of his allegations.  The record shows that, by the time Mr. Anderson was transferred from Bridgeport Correctional Center in August 2005 to correctional centers overseen by these three wardens, he was already receiving mental health care.  [Gaw Aff. ¶¶6-8; Doc. 43-8 Certified Medical

_____

[5]Plaintiff does not allege that his attorney attempted to contact Wardens Sieminski, Dzurenda and Choinski to request mental health services.

Records at 56-62, 73-79, 134].  "As one court noted, 'if mere receipt of a letter or similar complaint were enough, without more, to constitute personal involvement, it would result in liability merely for being a supervisor, which is contrary to the black-letter law that §1983 does not impose respondeat superior liability.'" Johnson v. Wright, 234 F. Supp. 2d 352, 363 (S.D.N.Y. 2002) (quoting, Walker v. Pataro, 2002 WL 664040, at *12 (S.D.N.Y. Apr. 23, 2002).  On this record, plaintiff has failed to demonstrate personal involvement of Wardens Ford, Sieminski, Dzurenda and  Choinski on the basis of the sentencing mittimus.

Simply put, there is nothing in the plaintiff's summary judgment motion evidencing any wrongdoing by these four wardens. The record demonstrates that any decision concerning whether plaintiff required in-patient psychiatric care and/or psychiatric medications was the responsibility of UCONN and its mental health staff, not the wardens. See Findings of Fact ¶¶10-15, 23. Even if plaintiff could show that defendants were aware of the mittimus and the direction that plaintiff receive a psychiatric evaluation, mental health treatment would be implemented by UCONN mental health staff.  The record demonstrates that plaintiff was receiving mental health care upon his return to the correctional system in May 2005.  Findings of Fact ¶¶16, 23. Mr. Anderson was screened by CMHC staff "shortly after he re-entered the correctional system on May 5, 2007." [Gaw Aff. ¶7]. The record indicates that mental health staff attempted to evaluate

plaintiff and/or performed evaluations on May 5, July 28, August 11, 12, 17, October 4, 5, 20, November 8, 15, 2007. [Gaw Aff. ¶¶7-15]. "[A]s a prison administrator [the] Warden . . . justifiably may defer to the medical expert regarding treatment of inmate/patients." Liscio v. Warren, 718 F. Supp. 1074, 1082 (D. Conn. 1989), rev'd on other grounds, 901 F.2d 274 (1990), citing McEachern v. Civitelli, 502 F. Supp. 532, 534 (N.D. Ill. 1980) (reliance upon opinion of medical staff as to the proper course of treatment insulates prison administrator from liability under the Eighth Amendment). This is especially so when prison administrators do not have the authority to order surgery or other sought-after treatment. Gomm v. DeLand, 729 F. Supp. 767, 781 (D. Utah 1990), aff'd, 931 F. 2d 62 (1991). On this basis, defendants's Motion for Summary Judgment is **GRANTED**, as plaintiff has not shown any evidence of personal involvement on the part of defendants in the denial of medical care.

Similarly, plaintiff has failed to provide any evidence that defendants retaliated against Mr. Anderson by placing him into the Chronic Disciplinary Unit. Plaintiff provided no evidence that any of the defendants was personally involved in the decision to place plaintiff in the Unit. Rather, Mr. Levesque made the decision to place plaintiff in the Unit based on plaintiff's record of poor behavior. See Findings of Fact ¶¶8, 9, 20, 21, 22. Finally, to the extent that plaintiff argues that his poor disciplinary behavior was due to the inadequacy of mental health services, his claims still fail for the reasons

20

previously stated. <u>See</u> <u>infra.</u> n.4. Accordingly, defendants'
Motion for Summary Judgment is **GRANTED,** based on plaintiff's
failure to demonstrate personal involvement of the defendants in
the alleged constitutional violations.


<u>Eleventh Amendment</u>

The Eleventh Amendment bars claims for damages against the
state, state agencies or state employees sued in their official
capacities. <u>See</u> <u>Kentucky v. Graham</u>, 473 U.S. 159, 169 (1985).
The enactment of 42 U.S.C. § 1983 did not abrogate the states'
Eleventh Amendment immunity and Anderson alleges no facts from
which the court could infer that the State of Connecticut has
waived that immunity. <u>See</u> <u>Quern v. Jordan</u>, 440 U.S. 332, 342
(1979).

Plaintiff does not seek injunctive relief and is no longer
incarcerated.

Accordingly, defendants' Motion for Summary Judgment is
**GRANTED** and plaintiff's Motion for Summary Judgment against
defendants in their official capacities is **DENIED.**

CONCLUSION

For the reasons stated, defendants' Motion for Summary Judgement [**Doc. #43]** is **GRANTED** as to all the defendants.[6]

Accordingly, plaintiff's Motion for Summary Judgment **[Doc. #43]** is **DENIED**.

ENTERED at Bridgeport this 15th day of October 2007.

___/s/_____
HOLLY B. FITZSIMMONS
UNITED STATES MAGISTRATE JUDGE

---

[6]This is not a recommended ruling.  The parties consented to proceed before a United States Magistrate Judge [Doc. #17] on March 27, 2007, with appeal to the Court of Appeals.